### STAFFORD *et al.*, adm'rs, *v.* THOMAS, adm'r.

The court construed the marriage settlement correctly.

July 13, 1891.

Estates.  Marriage settlements.  Before Judge BOYNTON.  Pike superior court.  October term, 1890.

Reported in the decision.

J. S. POPE and HALL & HAMMOND, for plaintiffs.

T. B. CABANISS, A. D. HAMMOND, J. F. REDDING and HARRISON & PEEPLES, for defendant.

LUMPKIN, Justice.

Alvis Stafford, in consideration of a marriage about

to be solemnized between himself and Mrs. Lucy Mc-
Kenzie, made a deed conveying to J. A. Stafford, as
trustee, certain property, the terms of the conveyance
being as follows :

"In trust for the use and benefit of her, the said Lucy
McKenzie, for and during her natural life, and reserv-
ing to myself the use of the same during my natural
life. And after my death the same to be held, used and
controlled for the benefit of the said Lucy during her
natural life. And after the death of myself and the
said Lucy, or the death of myself and the marriage
again of the said Lucy, then the house and lot to be
by the said J. A. Stafford divided between [two grand-
daughters, naming them], to them one half, and the
other half to the said Lucy McKenzie, including the
household and kitchen furniture."

It was admitted that Mrs. Stafford never married
after the death of Alvis Stafford, and that she died leav-
ing no lineal heirs. The administrator of the deceased
Mrs. Stafford filed a petition against the administrators
of Alvis Stafford for a partition of the house and lot
mentioned in the above deed. The defence was that
the plaintiff could not recover because his intestate took
only a life estate under the deed. The court held that
Mrs. Stafford took a fee in an undivided half-interest
in the property, and this decision is the error com-
plained of.

In our opinion, the court correctly construed the
marriage settlement. The deed, after reserving to Mr.
Stafford the use of the property during his life, con-
veyed to Mrs. Stafford, after his death, the entire use of
it while she lived. It seems the grantor expected that
Mrs. Stafford would survive him, because he provided
for her a trustee who was to act as such after his death.
In the next place, the deed provided that after the
death of both the grantor and Mrs. Stafford, or after
his death and her marriage, upon the happening of
either of these events, the property was to be divided

one half going to grantor's granddaughters, and the
other half to Mrs. Stafford.    To adopt the plain and
grammatical construction of this clause of the deed,
when the grantor and Mrs. Stafford were both dead, the
absolute title to one half of the property was to go to
Mrs. Stafford; and as she would then be dead, that
half would necessarily go to her heirs.    If, however,
she again married after the death of the grantor,
the title to one half would vest immediately in her.
Counsel for plaintiff in error contended that the proper
construction of this deed would give to the wife a
life estate after grantor's death, with remainder to the
granddaughters named, provided she died without
marrying again ; but in the event of her so doing, the
property would be equally divided, one half to her
and one half to the granddaughters.    To adopt this
construction would lead to the strained and unnatural
conclusion that the grantor meant to offer a premium
to his wife to marry again after his death, which,
in our opinion, certainly never was his intention.    If
so, it is the first instance of the kind of which we
have any knowledge.    The difficulty suggested by
counsel for plaintiff in error as to the disposition of the
property in case of the death of both Mr. and Mrs.
Stafford, to wit, that Mrs. Stafford, being dead, could
not take, can be obviated by adopting the construction
that the grantor intended that after his death, and dur-
ing Mrs. Stafford's life, the property was to be man-
aged for her by the trustee, and upon her death, her
half was to go as she might direct by will, or to her
heirs.    Again, the deed nowhere gives to the grand-
daughters any more than one half of the property, and
we are at a loss to perceive how, under it, they could in
any event take more than one half.    It cannot be
doubted that the instrument intended to make a dispo-
sition of all the property, and as no distinction what-

v 87-36

ever is made by the grantor as to the division to be made upon the death of himself and his wife, or the death of himself and the marriage again of his wife, we are strengthened in our conclusion that he intended in either of these events that the granddaughters should have one half and the wife, or her estate, the other. It should also be borne in mind that the consideration of this deed being marriage, it is more than likely the lady stipulated that she was in any event to have an absolute half-interest in this property, and that this was understood by the contracting parties.

*Judgment affirmed.*